UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TERRY LEE LAFLEUR,<br><br>          Plaintiff,<br><br>vs.<br><br>DR. THOMAS C. JETZER,<br><br>          Defendant. | 4:14-CV-04175-KES<br><br><br>ORDER DENYING MOTION TO AMEND, GRANTING MOTION TO DISMISS, AND DENYING CERTIFICATION OF CLASS. |

**INTRODUCTION**

Plaintiff, Terry Lee LaFleur, filed this lawsuit naming Dr. Thomas C. Jetzer as defendant. LaFleur makes numerous claims concerning his examination by Dr. Jetzer and the subsequent denial of his workers' compensation benefits. Dr. Jetzer moves to dismiss LaFleur's amended complaint. Docket 30. LaFleur moves for certification of a class action. Docket 23. LaFleur also moves to amend his complaint. Docket 37. For the reasons stated below, Dr. Jetzer's motion to dismiss is granted, and LaFleur's motions to amend and for certification of class action are denied.

**FACTUAL BACKGROUND**

On March 5, 2014, LaFleur was injured in a motor vehicle accident. Docket 29 at ¶41. LaFleur worked for Advanced Auto Parts, Inc., and his duties included driving. *Id.* at ¶43. LaFleur received workers' compensation benefits for an unspecified amount of time. *Id.* at ¶14. On October 18, 2014, Dr. Jetzer

examined LaFleur at the request of Sedgwick Claims Management Services, Inc., the third-party administrator that handled LaFleur's claim for benefits. *Id.* at ¶5.

During the independent medical exam (IME), Dr. Jetzer asked whether LaFleur had been tested for post-concussion syndrome, had been given an electroencephalogram, or ever had a nerve conduction test for carpal tunnel syndrome. *Id.* at ¶7. According to the complaint, Dr. Jetzer knew LaFleur had not been treated for these conditions and expressed his concern. *Id.* LaFleur also alleges Dr. Jetzer "had reasons to suspect that Plaintiff might be experiencing these medical conditions," but he did not refer him to another doctor or treat the conditions. *Id.* at ¶8. The IME lasted twenty minutes and was the only time Dr. Jetzer examined LaFleur. *Id.* at ¶20. One week after the IME, Dr. Jetzer filed his report with Sedgwick. *Id.* at ¶12. This report allegedly caused Sedgwick to terminate LaFleur's benefits. *Id.* at ¶27.

Dr. Hoversten performed a second examination on LaFleur on December 2, 2014 at Sanford Orthopedic Hospital in Sioux Falls. *Id.* at ¶31. LaFleur claims Dr. Hoversten "was consulted for the limited purpose of obtaining a second opinion of [his original doctor's] diagnoses and prognoses." *Id.* at ¶32. Before this examination, LaFleur claims that Dr. Jetzer "published Plaintiff's unprivileged medical information to" Dr. Hoversten. *Id.* at ¶31.

LaFleur alleges that he relied on the "duty of reasonable care" Dr. Jetzer owed to him, and did not immediately seek medical treatment for the conditions discussed above. *Id.* at ¶9. It was not until December 12, 2014, that

2

LaFleur "could no longer stand the debilitating symptoms" and sought medical treatment. *Id.*

## PROCEDURAL BACKGROUND

LaFleur filed this complaint on November 25, 2014. Docket 1. He amended his complaint on January 7 and January 9, 2015. Dockets 9 and 11. Dr. Jetzer responded by moving to dismiss the amended complaint for failing to state a claim. Docket 15. LaFleur moved to amend his complaint. Dockets 18, 19. The court granted this motion, Docket 26, over Dr. Jetzer's objection, Docket 20, and denied Dr. Jetzer's motion to dismiss as moot. Docket 28. LaFleur also moved to certify his complaint as a class action. Docket 23.

LaFleur filed his current, amended complaint on May 6, 2015. Docket 29. Dr. Jetzer now moves to dismiss this complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for lack of subject matter jurisdiction under 12(b)(1). Docket 30 at 2-3. In response, LaFleur filed "Plaintiff's Resistance Of Defendant's Motion To Dismiss," restating his claims. Docket 32. He also filed a "Memorandum Of Authorities In Support Of Plaintiff's Resistance" in which he responded to Dr. Jetzer's motion to dismiss and supplied additional legal and factual support for his claims. Docket 33. Dr. Jetzer replied repeating his arguments and pointing out that he was not a proper party because LaFleur complained of Sedgwick and AAP's actions. Docket 34. LaFleur responded to this in a "Reply To Defendant's Memorandum Of Authorities In Support Of Plaintiff's Resistance." Docket 35. LaFleur responded again reiterating his arguments in support of class certification.

Docket 36. Finally, LaFleur moved to amend his complaint. Docket 37. Defendant oppose this amendment. Docket 38. For the following reasons, LaFleur's motion to amend is denied and his complaint is dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## LEGAL STANDARD

After the amended complaint and answer were filed, both parties filed numerous documents. "A court generally may not consider materials outside the pleadings when deciding a motion to dismiss for failure to state a claim . . . ." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). For purposes of this motion, the court has only considered the facts and arguments presented in the amended complaint and answer, disregarding the further filings.

"Under Federal Rule of Civil Procedure 12(b)(6), the factual allegations in the complaint are accepted as true and viewed most favorably to the plaintiff." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (citing *Gross v. Weber*, 186 F.3d 1089, 1090 (8th Cir. 1999)). "A complaint must 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013).

## DISCUSSION

### I. Motion to Amend Complaint

LaFleur moves to amend his complaint for a second time, arguing that there are other plaintiffs with similar claims relating to their IMEs. A motion for leave to amend is committed to the sound discretion of the district court. *Glickert v. Loop Trolley Transp. Dev. Dist.*, 792 F.3d 876, 880 (8th Cir. 2015) (quoting *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008)). "A party may amend its pleading once as a matter of course within . . . 21 days after serving it." Fed. R. Civ. P. 15(a)(1)(A). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Because it has been more than 21 days since defendant was served, leave of court is required.

The local rules for district courts in South Dakota state "any party moving to amend a pleading will attach a copy of the proposed amended pleading to its motion to amend . . . ." D.S.D. Civ. LR 15.1. LaFleur has not attached his proposed amended complaint. As a result, the motion to amend is denied for failure to comply with the local rules.

Even if LaFleur had complied with the local rules, his motion to amend would be denied. "District courts can deny motions to amend when there 'are compelling reasons such as ... futility of the amendment.'" *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014) (quoting *Reuter v. Jax Ltd.*, 711 F.3d 918, 922 (8th Cir. 2013)). In his motion, LaFleur argues that other individuals have had similar experiences to his in their IMEs. For the reasons stated below, LaFleur's claims concerning his IME are meritless. The fact that other individuals had the same experience as he did does not change the court's rationale. Therefore, the motion to amend the complaint for a second time is denied.

##  II.     Motion to Dismiss

In his first amended complaint, LaFleur alleges five causes of action: (1) medical malpractice, (2) fraud, misrepresentation, and concealment, (3) slander and libel (i.e. defamation), (4) public policy and public safety violations, and (5) violations of due process, equal protection, and HIPAA. Docket 29. Dr. Jetzer moves to dismiss all LaFleur's claims, arguing LaFleur failed to exhaust his administrative remedies, Dr. Jetzer is entitled to immunity under SDCL 20-11-5, Dr. Jetzer is entitled to common law witness immunity, LaFleur fails to state a claim for medical malpractice because his complaint does not establish a doctor-patient relationship, LaFleur's public policy and safety, due process, and equal protection claims are frivolous and fail to state a claim, and LaFleur fails to state a claim under HIPAA. Docket 30.

### A.   Failure To Exhaust Administrative Remedies

Dr. Jetzer first argues that all of LaFleur's claims should be dismissed under 12(b)(1) because the court lacks jurisdiction. Docket 31 at 3. Dr. Jetzer argues the court lacks jurisdiction because LaFleur has not exhausted his administrative remedies under South Dakota's workers' compensation system. *Id.* In a diversity action, the court applies the substantive law of the state in which it is located. *Hammonds v. Hartford Fire Ins. Co.*, 501 F.3d 991, 996 fn. 6 (8th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). South Dakota law governs this case. Under South Dakota law, "Worker's compensation is the exclusive remedy for all on-the-job injuries to workers except those injuries intentionally inflicted by the employer." *Harn v. Cont'l Lumber Co.*, 506 N.W.2d 91, 95 (S.D. 1993).

"Exhaustion of administrative remedies is a fundamental principle of administrative law and jurisprudence that precludes a state court from exerting jurisdiction over a claim that has not yet reached the final stages of the administrative process." *Zuke v. Presentation Sisters, Inc.*, 589 N.W.2d 925, 929 (S.D. 1999). "It is a settled rule of judicial administration that 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.' " *Jansen v. Lemmon Fed. Credit Union*, 562 N.W.2d 122, 124 (S.D. 1997) (quoting *S.D. Bd. of Regents v. Heege*, 428 N.W.2d 535, 539 (S.D. 1988)). "Exhaustion of administrative remedies applies to disputes cognizable by an administrative

7

agency." *Zuke*, 589 N.W.2d at 929 (citing *Johnson v. Kolman*, 412 N.W.2d 109, 112 (S.D. 1987)).

LaFleur's claims under Counts II and III alleging "fraud, misrepresentation, and concealment" and "slander and libel," concern statements made by Dr. Jetzer in his IME report. The only damage LeFluer claims under Count II is that his wokers' compensation benefits were revoked. Docket 29 at ¶27. Count III does not clearly allege damages, but even if the IME report was libelous, it did not damage LaFluer except by causing Sedgwick to revoke his workers' compensation benefits. LaFleur does not assert that the allegedly fraudulent, misrepresented, or libelous statements themselves caused any other damage to him. Because Counts II and III are essentially claims for loss of benefits, they are "cognizable by an administrative agency." LaFleur has not alleged that he has exhausted his administrative remedies regarding these claims. Therefore, these claims are dismissed for failure to state a claim upon which relief can be granted.

LaFleur's medical malpractice, policy, safety, and constitutional claims are distinguishable from Counts II and III because they allege injuries separate from LaFleur's work-related injuries and subsequent claim for benefits. These claims allege injuries that arise out of the IME itself and Dr. Jetzer's actions outside of the workers' compensation scheme. Dr. Jetzer cites *Chavez v. Loiseau Const., Inc.*, No. CIV. 04-4165, 2006 WL 2382330 (D.S.D. Aug. 16, 2006), to support his argument for dismissal. In *Chavez*, the plaintiff did not present "evidence to demonstrate he made a claim for work-related injury

8

before the Department of Labor[,] . . . admitted he never informed the Defendants about any alleged injury he suffered, and the Defendants had no knowledge about such injury until after this litigation began." *Id.* at *4. The court held it was "without jurisdiction to entertain a [work-related injury] claim . . . ." *Id.* This court does not find *Chavez* persuasive, however, because LaFleur claims damages arising from the IME itself rather than from a work-related injury as in *Chavez*.

Because the court finds that LaFleur's medical malpractice, policy, safety, and constitutional claims are not, in essence, claims seeking workers' compensation benefits, the claims are not cognizable by an administrative agency. As a result, Dr. Jetzer's motion to dismiss these claims for failure to exhaust administrative remedies is denied.

### B. Medical Malpractice Claim

Dr. Jetzer argues that LaFleur fails to state a claim for medical malpractice because he has not established the requisite doctor-patient relationship. Docket 31 at 23. The crux of LaFleur's claim is that Dr. Jetzer knew LaFleur suffered from certain conditions and did not treat him or refer him to another doctor to be treated. Docket 29 at ¶5-15.

The South Dakota Supreme Court has not addressed the question of whether a doctor-patient relationship is formed when a physician is hired to perform an IME in a pending workers' compensation claim. The IME statute, however, suggests that a doctor-patient relationship is not formed because it describes the examination's purpose as "determining the nature, extent, and

9

probable duration of the injury received by the employee and . . . ascertaining the amount of compensation which may be due the employee from time to time for disability according to the provisions of this title." SDCL 62-7-1.

The majority of courts that have considered this question found medical malpractice claims arising from IMEs "fail as a matter of law for lack of a duty of care." *Smith v. Radecki*, 238 P.3d 111 (Alaska 2010); *see, e.g., Joseph v. McCann*, 147 P.3d 547, 551 (Utah Ct. App. 2006) (holding there was no doctor-patient relationship where doctor was contracted by the city to perform an IME and noting that a majority of jurisdictions support this analysis.); *Erpelding v. Lisek*, 71 P.3d 754, 757 (Wyo. 2003) (holding while performing an independent psychological evaluation for the benefit of plaintiff's employer, defendant did not owe plaintiff a duty of care and noting "this conclusion is in accord with virtually every other court that has considered this issue."); *Hafner v. Beck*, 916 P.2d 1105, 1108 (Ariz. Ct. App. 1995) (holding there was no doctor-patient relationship where psychologist was hired by the insurance carrier to evaluate the claimant and not to treat her, concluding that the psychologist's duty of care ran only to the carrier, not the patient.); *Henkemeyer v. Boxall*, 465 N.W.2d 437, 439 (Minn. Ct. App. 1991) (holding no doctor-patient relationship existed where plaintiff is examined adversely to determine eligibility for workers' compensation benefits).

A minority of courts have found that an independent examiner owes the examinee a duty of care. *See, e.g.,* Webb v. T.D., 951 P.2d 1008, 1013 (Mont. 1997) (IME physician has a duty to exercise reasonable care in communicating

results of examination to examinee); *Greenberg v. Perkins*, 845 P.2d 530, 536 (Colo. 1993) (holding an IME "itself may be said to create a relationship between the parties and impose upon the physician a duty to exercise a level of care that is consistent with his professional training and expertise"). In light of South Dakota's IME statute, it is likely the South Dakota Supreme Court would follow the majority of courts that have considered this issue and find that Dr. Jetzer did not owe LeFleur a duty of care. Because LaFleur failed to show the existence of a doctor-patient relationship, the amended complaint fails to state a medical malpractice claim. Therefore, Dr. Jetzer's motion to dismiss is granted.

### C.  Public Policy and Safety Violations

LaFleur claims that Dr. Jetzer "intentionally placed [his] health and safety at risk in violation of both Public Policy & Public Safety." Docket 29 at ¶39. LaFleur argues that because he drives for a living, sending him back to work was dangerous both to him and the public. The rest of the claim is a restatement of his medical malpractice and fraud claims. *Id.* at ¶¶42-43. Even liberally construed, there is no legal support for LaFleur's claim. He cites to the National Highway Traffic Safety Administration guidelines for physicians but does not explain what the guidelines say, how they are binding on Dr. Jetzer, or exactly how Dr. Jetzer violated the guidelines. Because LaFleur provides no legal basis for this claim, it is dismissed.

### D.  Due Process, Equal Protection, and HIPAA Claims

LaFleur claims Dr. Jetzer "deprived [him] of his state and federal rights by not exhausting the administrative remedies nor due process or equal protection, available to the Defendant under SDCL § 62 . . . ." *Id.* at ¶45. It is unclear what LaFleur means by this. Under the workers' compensation scheme, it is LaFleur, not Dr. Jetzer, who must exhaust his remedies. *See* SDCL 62-7-19. These assertions are merely "labels and conclusions," insufficient to state a claim upon which relief may be granted. *Twombly*, 550 U.S. at 555.

LaFleur also claims that he is a member of a protected class because he "(1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) [i]s regarded as having such an impairment as determined by the SSA; the American's With Disabilities Act of 1990." Docket 29 at ¶48. Because LeFleur does not allege that membership in this class was the basis of Dr. Jetzer's treatment, he fails to state an equal protection claim.

LaFleur claims Dr. Jetzer "violated H.I.P.A.A. by publishing unprivileged medical information to a non-interested third party without express authority." *Id.* at ¶46. "HIPAA does not create a private right of action." *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) (citing *Adams v. Eureka Fire Prot. Dist.*, 352 Fed. App'x. 137, 139 (8th Cir. 2009); *Acara v. Banks*, 470 F.3d 569, 571-72 (5th Cir. 2006)). LaFleur's claims under the Due Process clause, the Equal Protection

clause, and HIPAA fail to state a claim upon which relief can be granted and are dismissed.

## CONCLUSION

LaFleur's motion to dismiss is frivolous and is denied. In LaFleur's first amended complaint, Counts II and III are merely surreptitious claims to reinstate his workers' compensation benefits. Because he has failed to exhaust his administrative remedies before bringing these claims in this court, the court is without jurisdiction to hear these claims. LaFleur's medical malpractice claim fails because he does not establish a doctor-patient relationship necessary to hold Dr. Jetzer to a duty of care. His remaining counts do not state cognizable claims. Accordingly, it is ORDERED

1. Plaintiff's motion to amend (Docket 37) is denied.
2. Plaintiff's amended complaint (Docket 29) is dismissed without prejudice.
3. Defendant's motion to dismiss (Docket 30) is granted.
4. Plaintiff's motion for certification of class action (Docket 23) is denied as moot.

Dated October 19, 2015.

BY THE COURT:

/s/ Karen E. Schreier
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE